Dawson v. Holcomb.

transcript required, on his paying the cost of the suit, which he refused to do.

The cause was tried in the common pleas, and removed to this court by appeal.

A number of witnesses were called, who proved the facts substantially as charged in the declaration.

The principal points contested were, whether the justice had a right to withhold the transcript, in consequence of a refusal to pay the cost, and whether the suit was not commenced before the cause of action arose.

---

DAWSON v. HOLCOMB, SHERIFF OF GALLIA COUNTY.

IN ERROR.—*Sheriff—Money received on Execution—Attachment.*

Money received by a sheriff on execution can not be attached in his hands.

THIS case came before the court, consisting of Judges Hitchcock and Burnet, at the May term, 1824, in Gallia county.

It appeared from the record, that Dawson recovered these judg-

ments, against Joseph Fletcher, in the Supreme Court, which were regularly certified to the common pleas, with a special mandate to carry them into execution. That, on the 14th of December, 1822, executions were issued thereon, and put into the hands of the defendant, Holcomb, who was sheriff of Gallia county, to be executed. At the May term following, Holcomb returned the executions, with an indorsement that he had made the money, as he was commanded, and that, having the money in his hands, a writ of foreign attachment, at the suit of Fletcher, the defendant, in execution, against Dawson, the plaintiff in execution came to his hands, by virtue of which he attached the said money, s that he could not have it before the court, to be paid over, etc. Dawson, having demanded the money, served the sheriff with a notice of amercement, according to the statute, and in pursuance of that notice, moved the court below for judgment, which motion, on hearing was overruled, on the ground that the sheriff was excused from paying the money, by reason of the attachment. To reverse that judgment, the writ of error was sued out.

276] *Opinion of the COURT:

We see nothing in this case that could protect the sheriff against the motion to amerce. By the terms of the writ of execution, he was not merely commanded to make the money, but to have it before the judges on the return day, to satisfy the plaintiff. In strictness of law, he was not at liberty to pay it over to the judgment creditor before he brought it into court, and although this is often done with impunity, yet it is always at the risk of the officer, and if a third person should appear from the record to have an equitable right to the money, it would become a question whether such payment would exonerate the officer.

The form of the writ, as far as it goes, is good evidence of the duty of the sheriff. He may be held to a literal compliance with it, and whenever that is dispensed with, it is not because he has a legal right to do so, but because the court are presumed to have permitted it. While the money remains in the hands of the officer, it is in the custody of the law. It does not become the property of the judgment creditor till it is paid over, and consequently is not liable to be attached as his. The writ of attachment could not supersede the execution, or release the sheriff from a literal compliance with its command, which required him to

Dawson v. Holcomb.

bring the money into court, so that it might be subject to their order. Cases frequently occur, in which the right to receive the proceeds of a judgment is contested, and in which the decision of the court is necessary as a guide to the officer.

It will not be contended that he is the proper person to determine the rights of claimants; but if he may legally dispose of the money, before the return of his writ, that power is necessarily vested in him. In the case of Ross v. Clark, 1 Dall. 354, the defendant had obtained a judgment against Ross, who paid the money into the hands of the prothonotary, and then attached it. On a rule to show cause, the court quashed the writ, because the money in the hands of the prothonotary was to be considered in the same state as if it had been paid into the hands of the sheriff. In the case of Turner v. Fendall, 1 Cran. 117, it was the opinion of the court that, although money could be taken in execution, if in the possession of the defendant, yet that it could not be so taken till it had been paid over to the person entitled to receive it, because, until so paid, it does not become his *property—he has not the actual legal ownership of the [277 specific pieces of coin which the officer may have received. Such a right, say the court, can only be acquired by obtaining the legal or actual possession of them, and until this be done, there can be no such absolute ownership as that an execution may be levied on them. By the authority of this case, the money in question was not liable to an execution while in the hands of the officer. It would be difficult, then, to assign a reason why it should be subject to an attachment, for, in this case, as well as in the other, it is necessary that the thing taken should be the property of the person against whom the process issues.

The second section of the statute regulating attachments requires the officer to whom it is directed, to go to the place where the property is, or may be found, and there, in the presence of two creditable witnesses, to declare, that by virtue of the writ to him directed, he attaches, etc. The third section requires that if the property be left with the person in whose custody or possession it shall be found, that person shall enter into bond to the officer, with two good and sufficient sureties, with condition that such property, or the appraised value thereof, shall be forthcoming, etc. Now, it may be asked how the sheriff could discharge this duty in the case before us? But it is not thought necessary to

rely on the impossibility of a literal compliance with these requisitions of the statute, although a strong argument might be drawn from them, in favor of the position that the act was not intended to apply to a case like the present, or if it was, that the process should be directed to some other person. A strong argument might also be drawn from the mischievous consequences that would follow such a course of practice. It would lead to endless delay and vexation. One attachment might follow another, till the whole demand was absorbed in cost. The honest creditor, on the eve of receiving the fruit of his judgment, might find himself farther from his object than when he sued out his original process. In short, the introduction of such a practice would measurably defeat the aim of legal process, as far as it is resorted to for the recovery of money.

We are clearly of opinion that the sheriff's return contains no apology or excuse for the non-payment of the money, and that he 278] ought to have been amerced on the *motion of the plaintiff. If the attachment issued with a special reference to the detention of this particular sum in the hands of the officer, it was an abuse of the process of the court. This, however, we are satisfied was not the fact, from the known respectability of all the parties concerned in the transaction. .

The judgment must be reversed, and the cause remanded to the common pleas for further proceedings.